## CITY OF MINNEAPOLIS v. JEWELL.*

(Circuit Court of Appeals, Eighth Circuit. October 16, 1916.)

No. 4578.

1. PATENTS ⬤➡328—INVENTION—SYSTEM FOR CONTROLLING OPERATION OF FILTERS.

The Jewell patent, No. 649,410, for a system for controlling the operation of filters, claim 1, which covers broadly the idea of the control of the valves of a filter from a central station is void for lack of invention, in view of the prior art.

2. PATENTS ⬤➡328—INVENTION—FILTER.

The Jewell patent, No. 649,411, for a filter, claim 14, is void for lack of novelty and invention.

Appeal from the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Suit in equity by Ira H. Jewell against the City of Minneapolis. Decree for complainant, and defendant appeals. Reversed.

---

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied December 20, 1916.

Amasa C. Paul, of Minneapolis, Minn. (Chas. D. Gould and Richard Paul, both of Minneapolis, Minn., on the brief), for appellant.

John E. Stryker, of St. Paul, Minn., for appellee.

Before HOOK and ADAMS, Circuit Judges, and ELLIOTT, District Judge.

HOOK, Circuit Judge. This is an appeal by the city of Minneapolis from a decree of injunction and for an accounting for infringement of claim 1 of patent No. 649,410 and claim 14 of patent No. 649,411, both issued to the plaintiff Ira H. Jewell, and dated May 8, 1900.

[1] The first of these patents relates to a system for controlling the operation of filters. Claim 1, held to have been infringed, is as follows:

"A filter provided with a system of controlling valves which are provided with actuating devices located so as to be accessible for control from a single position of an operator."

This claim is not for any particular novel method of accomplishing the result indicated, but embraces broadly the idea of control of the valves of a filter from a central station or position. It is quite immaterial whether it was intended to apply it to a single filtering unit or to a series of units of a more comprehensive plant, or whether the actuating means is by hand, or by hydraulic, pneumatic, or electric power. The claim is for an all-embracing central control. There is too much in the prior art, and in common, familiar practice in other branches of industry, to admit of the validity of a claim so broadly made. It is sufficient, without more, to refer to the patent to Cowles, No. 564,474, July 21, 1896, relating to improvements in apparatus "for opening and closing doors, hatches, ports, valves, cocks, gates," etc. One of Cowles' specified objects was a combination of apparatus "whereby two or more independent mechanical devices, which may be widely separated and of varying types, may be independently and systematically operated, controlled, continuously registered, and locked, all from the same point, 'central station,' or operating board, and by one operator." Cowles' idea of operating from a central position the mechanical devices which actuate separated valves stands out very clearly, and it is not important that he intended it principally, though not exclusively, as he says, to be applied to an hydraulic system on shipboard.

[2] Claim 14 of the second patent held to have been infringed is:

"A filter comprising a tank having a tapered lower end, and an opening at the bottom of the same, a screen at the lower end of the tank in line with said opening, a granular filter bed within said tank, the part of said bed contained within the tapered portion of the tank being made of relatively large granules whereby water passing upwardly therethrough in washing the filter is laterally deflected, so as to be distributed throughout all parts of the bed and a screen interposed between said larger granules and the part of the bed above the same."

It was old in the filtering art to employ a filtering medium composed of a bed of fine material like sand overlying one of coarser ma-

terial like gravel, and to cleanse it of the impurities deposited during filtration by a reverse or upward current of water flowing either normally or under pressure. It was desirable for efficient cleansing that the water in reverse movement be deflected and distributed so that it would reach every part of the filter bed, particularly the overlying sand, and leave no unwashed portions. We think it is too clear for much discussion that all of the elements of plaintiff's claim 14 are found in the prior patents to Hyatt, No. 322,103, No. 409,970, and No. 619,-755, and the patent to Peterson, No. 222,731. Those pertaining to the object above indicated, and which it is contended the defendant is using in its municipal water plant, are shown in the last patent to Hyatt, No. 619,755, dated February 21, 1899, excepting the screen interposed between the sand and gravel. The plaintiff says this screen is important as an aid in distributing the reverse flow of water to the superimposed bed of sand. This idea is evidently an afterthought born of the litigation. The function of the screen is described in the specifications of the patent in suit as being "to prevent the pebbles from rising upwardly out of place when the filter is being washed by reversing the water therethrough," and it is added:

"In case the reverse current be under a low pressure said screen may be omitted."

No such function for the screen as is now asserted is mentioned in the specifications or stated in the claim, though it should be said that if the screen were novel and the function were actually performed the omission would not deprive the plaintiff of the benefit. But it was old to have a screen between the coarse and fine layers of the filter bed. See patents to Peterson, No. 222,731; Hyatt, No. 322,103; Weiderman, No. 347,403; and Hefel, No. 603,483. If the screen performed the function mentioned for the plaintiff, it would perform it in the older structures, though perhaps in Hyatt's case not as effectively, because the screen did not rest in actual contact with the gravel or larger particles below. It is also said that in high velocity washing the interposed screen was necessary to prevent the disturbance of the relative positions of the sand and gravel. This was doubtless the principal reason for its use in the older structures and also in the plaintiff's; but if in practice the gravel showed a tendency to be forced up and out of place, we do not think the insertion of a screen to prevent it doing so rises to the dignity of invention. It would have naturally occurred to an ordinary person familiar with such work.

The decree is reversed, and the cause is remanded, with direction to dismiss the bill.